**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| METROPCS, a brand of T-MOBILE USA, Inc., a Delaware Corporation<br><br>Plaintiff,<br><br>v.<br><br>PRUDENCE MASNO AGBOTON, a/k/a MASNO P. ABGOTON a/k/a PRUDENCE MASNO ENAGNON a/k/a MASNO PRUDENCE a/k/a PRUDENCE M. AGBOTON, a/k/a MASNO AGBOTON, a/k/a P. AGBOTON MASNO,<br><br>Defendant. | ) | Civil Action No: 16-4398<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff T-Mobile USA, Inc., a Delaware corporation ("T-Mobile" or "Plaintiff"), for itself and its MetroPCS brand (collectively referred to herein as "MetroPCS"), hereby files this Complaint for Damages and Injunctive Relief against PRUDENCE MASNO AGBOTON, a/k/a MASNO P. ABGOTON a/k/a PRUDENCE MASNO ENAGNON a/k/a MASNO PRUDENCE a/k/a PRUDENCE M. AGBOTON, a/k/a MASNO AGBOTON, a/k/a P. AGBOTON MASNO ("Defendant"), and states:

**INTRODUCTION**

1. T-Mobile sells wireless handsets under the brand MetroPCS ("MetroPCS Handsets" or "Handsets") for use with MetroPCS service on the T-Mobile wireless network. These MetroPCS Handsets are sold at prices significantly below the wholesale cost to MetroPCS so that the Handsets are more widely accessible to consumers. Defendant and his co-

conspirators are perpetrators of an unlawful scheme (the “Handset Theft and Trafficking Scheme” or the “Scheme”) to profit, at Plaintiff’s expense, from the illegal acquisition and resale of new MetroPCS Handsets by stealing the substantial financial investments that Plaintiff makes in the Handsets.

2. Defendant and his co-conspirators acquire new MetroPCS Handsets through various methods, including the use of “runners” and/or “mules.”[1] As part of his Scheme, the new Handsets, which may be purchased and sold multiple times before they are ever used, ultimately end up in the hands of someone other than a MetroPCS customer. Along the way, the Handsets are “unlocked” so they will operate on other wireless networks. Often the ultimate user of the phone is located overseas, in a country where the wireless service provider does not underwrite the cost of new phones.

3. Defendant’s Scheme takes advantage of the fact that while Plaintiff substantially invests in the Handsets to reduce the costs for legitimate MetroPCS consumers, other wireless service providers here or abroad do not. By obtaining the MetroPCS Handsets through theft or fraud and diverting them to other markets where cell phones are not subsidized, the Scheme converts Plaintiff’s investment dollars into profits for Defendant and his co-conspirators. Each of Defendant’s acts, individually as well as together, is a violation of Plaintiff’s rights and causes significant damage. Additionally, as participants in the conspiracy, Defendant is liable for the harm caused to Plaintiff by the entire Scheme.

[1] A “Runner” is an individual or entity that makes multiple purchases of new MetroPCS Handsets on behalf of phone traffickers like Defendant. A “Mule” is an individual or entity that signs up for wireless service with MetroPCS – never intending to comply with the terms and conditions – to obtain new subsidized MetroPCS Handsets for resale by phone traffickers like Defendant.

4. The Scheme causes tremendous harm to MetroPCS and to consumers. In addition to the pecuniary losses caused by Defendant's theft of Plaintiff's investment in MetroPCS Handsets, falsely paid commissions, lost sales and market expenses, and lost expected customer revenue, Defendant's misconduct harms MetroPCS's relationships with its customers, dealers, and others, as detailed more fully below. Defendant's Scheme also involves unlawfully accessing Plaintiff's protected computer systems and wireless network; trafficking of Plaintiff's protected and confidential computer passwords; and willful infringement of the MetroPCS trademarks. Defendant has caused substantial damage to MetroPCS's brand, image, and reputation.

5. Plaintiff seeks to recover damages for the harm caused by Defendant's Handset Theft and Trafficking Scheme, and to obtain an injunction prohibiting Defendant from continuing to perpetrate the Scheme.

6. All conditions precedent to filing this action have been performed, waived or excused.

7. Plaintiff has retained the undersigned attorneys to represent it in this action and has agreed to pay those attorneys a reasonable fee for their services.

**PARTIES, JURISDICTION, AND VENUE**

8. This is an action for damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

9. T-Mobile is a Delaware corporation, with its principal place of business in Bellevue, Washington.

10. MetroPCS was acquired by T-Mobile USA, Inc. in 2013 and is an exclusive T-Mobile brand.

11. Defendant is an individual and a citizen of Illinois and upon information and belief is personally engaged in, and helped facilitate, the improper conduct described herein. Upon information and belief, Defendant resides on Glenwood Avenue, in Chicago, IL.

12. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331, 1332, and 1338 because Plaintiff's claims for violation of the United States Trademark Act, Title 15 of the United States Code and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. arise under federal law and because diversity exists between the parties and the amount in controversy exceeds $75,000.00 exclusive of costs, fees, and interest. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

13. Defendant is subject to the personal jurisdiction of this Court because he has conducted, engaged in and carried out business ventures within the State of Illinois, committed tortious acts within the State of Illinois, and has engaged in substantial and not isolated activity within the State of Illinois.

14. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

**PLAINTIFF'S BUSINESS MODEL**

15. T-Mobile, which is based in Bellevue, Washington, is a well-established telecommunications leader in product and service innovation. T-Mobile has invested heavily in developing and maintaining its reputation and the reputation of its brands, including MetroPCS.

It prides itself on its advanced nationwide 4G LTE network and low cost options provided for its customers. T-Mobile USA, Inc. provides services through its subsidiaries and operates its flagship brands, T-Mobile and MetroPCS. It currently serves approximately 57 million wireless customers and provides products and services through approximately 70,000 total points of distribution.

16. MetroPCS, acquired by T-Mobile on May 1, 2013, has been in the forefront of telecommunications for decades by offering customers reduced-cost handsets and flat-rate wireless service plans. MetroPCS prides itself on the value and variety of device choices from leading brands provided to its customers. The cornerstone of MetroPCS's business model is providing customers with affordable, reliable wireless products and services to match their needs and lifestyles. A flagship brand operated by T-Mobile, MetroPCS products and services are available online and across the United States through a network of company-owned stores, and authorized dealer locations, with whom MetroPCS has contractual relationships.

17. T-Mobile and MetroPCS are widely-recognized leaders in prepaid wireless service and highly value the outstanding business reputation they have worked hard to develop. MetroPCS has been recognized as a J.D. Power Customer Champion for delivering service excellence after being evaluated across five categories including its people, presentation, process, product and price and T-Mobile again achieved the highest ranking in customer service in J.D. Power's 2015 Wireless Customer Care Full-Service Study for the 13th time.

18. MetroPCS's wireless program enables MetroPCS customers to choose from several flat-fee monthly voice and data plans for use with cutting edge devices on the T-Mobile wireless network. For the benefit of its customers, MetroPCS offers budget-friendly Handsets,

including the latest smartphones, for little or no upfront cost, no annual service contract, no overages, and no hidden device costs.

19. MetroPCS's business model is based upon the ability to deliver affordable, innovative, and desirable products and services to cost-conscious consumers. Therefore, Plaintiff assists customers in their purchase of MetroPCS Handsets for use on its network by selling the Handsets for less than what Plaintiff pays to the manufacturers for the Handsets. Plaintiff recoups the money it loses on the Handsets and in dealer commissions through revenue earned on the sale of MetroPCS service, which customers must use to transmit and receive voice, text, and data on the MetroPCS Handsets. In addition to subsidizing Handsets, MetroPCS provides discounts, rebates, and other incentive programs by which Plaintiff heavily invests in the Handsets to the ultimate benefit of legitimate MetroPCS customers. This investment is worth making if the customers pay for service on the MetroPCS network in accordance with the governing Terms and Conditions. MetroPCS is neither a manufacturer nor a wholesale distributor of Handsets. If MetroPCS was in the business of selling Handsets and not a telecommunications service provider, it could not offer consumers these significantly lower purchase prices and stay in business. Further, these types of substantial subsidies and investment programs are not offered by telecommunications carriers outside the United States; instead, foreign consumers pay full price for the phones from the manufacturers. Handset traffickers profit from the difference between the full value of the Handset and the subsidized price offered by MetroPCS.

20. MetroPCS Handsets are sold subject to terms and conditions ("Terms and Conditions") which restrict and limit the commercial resale and use of the Handsets. A copy of the Terms and Conditions is attached hereto as **Exhibit A**. The packaging of MetroPCS Handset

provides that by purchasing or opening the package, activating, using, or paying for MetroPCS service, the purchaser agrees to the MetroPCS Terms and Conditions posted on www.metropcs.com. Purchasers have the option to return the MetroPCS Handset in accordance with the return policy if they do not agree to the Terms and Conditions. The Terms and Conditions are legally valid and appropriate, and the Terms and Conditions constitute a valid and binding contract between MetroPCS and each of its customers.

21. MetroPCS is able to offer its Handsets to customers at reduced prices only if the Handsets are used as intended with MetroPCS service. Manufacturers that produce wireless phones for MetroPCS install proprietary software, requested and paid for by Plaintiff, on the MetroPCS Handsets. Among other things, this software is intended to prevent the Handsets from being used for other than MetroPCS service, except under circumstance in which legitimate customers meet the criteria to have the Handset unlocked.

22. Wireless technology is constantly changing and improving, and the wireless industry is intensely competitive. MetroPCS expends substantial resources to maintain its position as an industry leader and to ensure that its products and services are at the cutting edge of the latest technological developments. Providing its cost-conscious customers with quality and advanced technology at an affordable price is a key differentiator for MetroPCS and central to its business strategy.

23. Plaintiff invests heavily in efforts to provide MetroPCS customers with the most up-to-date wireless handsets, and shoulders most or all of the cost of purchasing a new phone for those customers. MetroPCS makes phones available to new customers at a low cost when they initiate wireless service, and also to existing customers at regular intervals.

24. As the demand, and therefore the price, for smartphones in various world markets skyrockets, the subsidized MetroPCS smartphones are a particularly attractive and lucrative target for participants in the Handset Theft and Trafficking Scheme.

**METROPCS TRADEMARK RIGHTS**

25. T-Mobile owns federal trademark registrations for the standard character and stylized MetroPCS® mark (collectively, the "MetroPCS Marks"). Copies of the certificates of registration issued by the United States Patent and Trademark Office ("USPTO") are attached hereto as **Composite Exhibit B**.[2] The stylized MetroPCS Marks are depicted below:

26. Plaintiff uses the MetroPCS Marks on and in connection with telecommunications products and services.

27. The MetroPCS Marks have become an intrinsic and essential part of the valuable goodwill and property of Plaintiff, who protects the MetroPCS Marks. The MetroPCS Marks are well-established and well-known to customers and the trade as a symbol identifying and distinguishing MetroPCS products and services, and signifying distinctive products and services of high quality. Only Plaintiff and its expressly authorized, affiliated agents are permitted to use the MetroPCS Marks. The MetroPCS Marks are valid, distinctive, protectable, have acquired secondary meaning, and are associated exclusively with Plaintiff and MetroPCS.

[2] On or around November 3, 2006, MetroPCS, Inc. assigned all of its MetroPCS Marks to MetroPCS Wireless, Inc. as part of a merger agreement. The assignment was recorded with the USPTO on April 3, 2007. On or around May 1, 2013 MetroPCS Wireless, Inc. assigned all of its MetroPCS Marks to T-Mobile USA, Inc. as part of a merger agreement. The assignment was recorded with the USPTO on May 2, 2013.

## DEFENDANT'S MISCONDUCT

28. MetroPCS has discovered that, although large quantities of its Handsets are being acquired throughout the United States, a significant number of these Handsets are not being used in connection with its services. Instead, entities and individuals such as Defendant and his co-conspirators, with no intention of lawfully connecting to or using MetroPCS services, are fraudulently acquiring and reselling MetroPCS Handsets in bulk quantities. The Handsets are acquired, either directly by Defendant or through his co-conspirators, and then sold for a substantial profit and shipped directly overseas or shipped to other domestic traffickers who add them to larger shipments headed overseas, to be used on foreign carriers' networks. Before being shipped overseas, the Handsets are usually taken out of their original packaging, and all accessories, warranties, and manuals are removed. The Handsets are often wrongfully unlocked by Defendant or his co-conspirators, to raise their value and prepare them for use on foreign carriers. Those new MetroPCS Handsets acquired through theft or fraud that are not shipped overseas are often sold in bulk domestically for inclusion in larger overseas shipments or for the warranty market. Defendant undertakes these actions for his own profit.

29. Once a MetroPCS Handset is unlocked and shipped overseas or resold domestically to be used on other wireless networks, Plaintiff no longer has a revenue source to recoup its investment in that Handset.

30. If MetroPCS identifies a Handset as connected with theft, fraud, or other loss, the International Mobile Station Equipment Identity ("IMEI") is logged into MetroPCS's system and the Handset can no longer be activated or used on the MetroPCS network unless or until that designation is changed by MetroPCS. This is done in attempt to deter criminal activity. The

Handset is thereafter referred to in the handset trafficking community as having a "Bad IMEI." As it is no longer a functioning MetroPCS Phone, the only value of a Bad IMEI Handset is in unlocking the handset for use on other domestic networks and for overseas resale.

31. Defendant is knowingly and willfully engaged in an enterprise that traffics in and resells MetroPCS Handsets. Defendant has acquired and sold large quantities of MetroPCS Handsets through various co-conspirators. While the complete extent of Defendant's activities in the Handset Theft and Trafficking Scheme is not yet known, Defendant is actively involved in several integral components of the conspiracy.

32. Defendant is not an authorized MetroPCS dealer. Defendant has no legitimate connection to MetroPCS.

33. Defendant trafficks illicitly-obtained new MetroPCS Handsets in bulk for resale. MetroPCS became aware of Defendant's illegal activities through his Craigslist advertisements soliciting MetroPCS Handsets. Moreover, Defendant's ads specifically and repeatedly emphasize that he is seeking "blacklisted" and "Bad IMEI" handsets and name both T-Mobile and MetroPCS. Defendant offers to pay Runners "DIRECT CASH $$$$ FOR YOUR BLACKLISTED (BAD ESN / BAD IMEI)" handsets and identifies specific models of new MetroPCS Handsets he is soliciting, including the LG L70 and LG Leon. Another advertisement by Defendant states "Blacklisted wanted Tmobile (T-MOBILE) / METROPCS (METRO PCS)." Samples of Defendant's Craigslist advertisements are attached hereto as **Exhibit C.** Defendant provided his telephone number in the ads and indicated a preference for contact to be by text message.

34. On January 28, 2016, undercover investigators contacted Defendant via text message in response to his ads soliciting new blacklisted MetroPCS LG L70 and Leon Handsets. Defendant identified himself and confirmed he was looking to purchase those handsets in bulk. He inquired as to whether the new Handsets were unlocked or if the undercover investigators could unlock the Handsets before delivery to Defendant. The investigators told Defendant that they had ten (10) MetroPCS LG L70 Handsets for sale, but were expecting 100 more the following week. Defendant was interested in all of the Handsets and inquired to confirm that they were "brand new" and "all metro[PCS]" handsets. Defendant admitted that he exports the Handsets. Copies of the text messages referenced herein are attached hereto as **Composite Exhibit D.**

35. The Defendant was particular in the types of MetroPCS Handsets he was seeking to purchase based on the ease of unlocking them, noting that he was not interested in a particular model of MetroPCS Handset because "they are a pain to unlock." Defendant was interested in buying nearly a dozen different models of MetroPCS Handsets, however, which he perceived to be easier to unlock for use on other networks and export. He told the investigators, "as long as yr phones are clean and brand new ... i don,t mind if they are blacklisted .. [sic]."

36. On January 30, 2016, an undercover investigator met Defendant in a public place in Chicago, Illinois. The two spoke for approximately 25 minutes while Defendant inspected the five new MetroPCS Handsets the investigator had brought to ensure they were clean and new. Defendant then powered up each of the Handsets and indicated that he was running the IMEI numbers. During the meeting, Defendant indicated that he has an unidentified partner and that they purchase hundreds of handsets for resale. Defendant admitted that he and his partner had

sold handsets overseas, and claimed that they also resell handsets domestically. Defendant purchased all five new MetroPCS Handsets from the undercover investigator and, through subsequent text messages, continued to express interest in buying MetroPCS Handsets in bulk of various models, including the 100 new MetroPCS LG L70 Handsets discussed.

37. None of the new MetroPCS Handsets that Defendant purchased from the undercover investigator have been activated on Plaintiff's network. Upon information and belief, instead, the Handsets were unlocked to be exported or used on other domestic carriers' networks. Also upon information and belief, Defendant obtained the additional new MetroPCS Handsets he was looking to acquire, including the 100 new MetroPCS LG70 Handsets, from another source and unlocked and resold those Handsets for a profit.

**SUBSTANTIAL HARM CAUSED BY DEFENDANT'S MISCONDUCT**

38. Defendant's actions substantially harm Plaintiff in several ways, including *inter alia*: (1) Plaintiff is deprived of the opportunity to recoup its substantial investment in MetroPCS Handsets; (2) Plaintiff is deprived of the opportunity to earn profits by providing wireless service to legitimate MetroPCS consumers; (3) Defendant's actions seriously and irreparably interfere with Plaintiff's relationships with its customers and dealers; and (4) Defendant's infringement of the MetroPCS name and Marks causes significant ongoing and irreparable losses and harm to MetroPCS's brand, image, and reputation. All of these factors undermine Plaintiff's competitive edge in the wireless industry.

39. On information and belief, the conduct of Defendant, his unknown co-conspirators, and others who engage in the unlawful acquisition and resale of large quantities of new MetroPCS Handsets has also resulted in shortages of available MetroPCS Handsets,

particularly the most in-demand models. This misconduct substantially harms Plaintiff and its relationship with dealers and consumers because Plaintiff is not able to supply sufficient MetroPCS Handsets to satisfy the demand from legitimate consumers who, as a result, go elsewhere for their telecommunications services.

40. Plaintiff suffers additional, irreparable harm when the MetroPCS Handsets are removed from the original packaging and altered because Plaintiff is deprived of the means to control the quality of its product. This becomes especially damaging where a potential legitimate MetroPCS customer within the United States acquires a Handset from Defendant that the customer believes is a genuine MetroPCS Handset, with all of the attendant benefits and is later disappointed in MetroPCS because the Handset does not work as intended on the network because it has been denominated a Bad IMEI Handset or otherwise. Furthermore, the process of unlocking and reselling a MetroPCS Handset voids the manufacturer's warranty on the device. The unlocked repackaged MetroPCS Handsets are then resold without the original manufacturer's warranty documentation. Both consumers and Plaintiff are harmed when a MetroPCS Handset that has been altered or sold by Defendant or his co-conspirators is submitted for warranty repair. Consumers who purchase MetroPCS Handsets from Defendant or his co-conspirators are unable to obtain warranty service in the event they experience problems with their Handsets. As a result, the MetroPCS reputation suffers.

41. MetroPCS's reputation is further damaged by its inability to assist those consumers who buy MetroPCS Handsets from Defendant, because despite bearing the MetroPCS Mark, they are no longer valid MetroPCS Handsets because the actions of Defendant and his co-

conspirators voided the warranties and/or as identified Bad IMEI phones, they cannot be activated on MetroPCS service.

42. Defendant's conduct has resulted in substantial harm to Plaintiff's business reputation and goodwill; a greater likelihood of confusion, mistake, and deception as to the source of origin of MetroPCS products unlawfully sold by the Defendant and confusion as to what if any relationship exists between Plaintiff and Defendant.

## CIVIL LITIGATION AGAINST OTHER PHONE TRAFFICKERS

43. Federal courts have recognized that conduct similar to Defendant's conduct is unlawful.

44. In addition to MetroPCS and T-Mobile USA, Inc., Sprint Solutions, Inc. and Sprint Communications Company L.P. ("Sprint), TracFone Wireless, Inc., Nokia Corporation, and AT&T Mobility LLC have all filed lawsuits in numerous federal courts across the country against handset traffickers engaged in the practice of defrauding legitimate consumers and the telecommunications companies by acquiring large quantities of wireless telephones and reselling them for profit. Each of those companies has succeeded in obtaining Final Judgments and Permanent Injunctions. Copies of several examples of Final Judgments and Permanent Injunctions are attached hereto as **Composite Exhibit E**. A defendant in one case who continued trafficking in phones in violation of an injunction issued by the U.S. District Court for the Southern District of Texas was charged with criminal contempt of court and sentenced to serve 57 months in prison. Copies of the Memorandum Opinion and Order of Contempt, Application for Criminal Contempt, the Order finding cause to believe the defendant is guilty of

criminal contempt, and Judgment of Criminal Contempt are attached hereto as **Composite Exhibit F**.

## CRIMINAL INVESTIGATION AND PROSECUTION OF PHONE TRAFFICKING

45. Handset traffickers like Defendant have been the subject of numerous criminal investigations and prosecutions across the country. Some recent examples are:

a. In August 2014, the United States Attorney for the District of Minnesota announced the indictment of 20 individuals engaged in the illegal acquisition and resale of tens of thousands of Smartphones to the black markets of the Middle East and China. A joint task force comprised of the U.S. Secret Service, the Minnesota Financial Crimes Task Force, and the St. Paul Police Department investigated and then apprehended members of the "Mustafa Organization," who had been using runners, engaged in contract and subscription fraud, and robbery to acquire large quantities of subsidized phones for overseas resale.

b. In March of 2013, the California Attorney General charged two individuals with trafficking nearly $4M in wireless phones to Hong Kong over an 8 month period.

c. On or about February 25, 2013, federal law enforcement authorities, including agents from the Federal Bureau of Investigation, the United States Secret Service, and the Bureau of Alcohol, Tobacco, Firearms and Explosives, raided a warehouse belonging to a phone trafficking company called Wireless Buybacks in Elkridge, Maryland, pursuant to a search warrant and found the facilities were being used to harbor stolen wireless phones.

d. On August 21, 2012, federal Homeland Security agents and SWAT teams conducted a raid on facilities operated by handset trafficker Ace Wholesale and on the home of the company's CEO, Jason Floarea. On October 16, 2014, Mr. Floarea, pled guilty to Interstate Transportation of Stolen Property and on April 16, 2015, Floarea was sentenced to twelve (12) months and one day in federal prison.

e. An FBI sting operation in Philadelphia that began with wireless phone trafficking resulted in the conviction of 16 individuals on terrorism charges, when it turned out that the proceeds from their phone trafficking and other illegal conduct was being funneled to the terrorist organization Hezbollah.

Copies of court documents, press releases, and news reports regarding these incidents are attached hereto as **Composite Exhibit G.**

## COUNT ONE

## TORTIOUS INTERFERENCE WITH EXISTING BUSINESS RELATIONS AND PROSPECTIVE ECONOMIC ADVANTAGE

46. Plaintiff reasserts the allegations set forth in Paragraphs 1 through 44 above as though fully set forth herein.

47. A business relationship, and an expectancy of business relationships, exists between Plaintiff and authorized dealers of MetroPCS Handsets.

48. A business relationship, and an expectancy of business relationships, exists between Plaintiff and current and prospective MetroPCS customers.

49. There is a high probability of future economic benefit to Plaintiff as a result of these current and prospective business relationships.

50. Defendant has knowledge of and has intentionally and unjustifiably interfered with, and/or has knowingly facilitated a conspiracy to interfere with, these current and prospective business relationships between Plaintiff and authorized dealers who sell MetroPCS products, and legitimate MetroPCS customers or prospective customers.

51. Specifically, but without limitation, Defendant knew that Plaintiff has business relationships, and an expectancy of business relationships, with legitimate consumers of MetroPCS Handsets and wireless service. Defendant interfered with these relationships by engaging in the Handset Theft and Trafficking Scheme and causing, at least in part, Plaintiff to have an insufficient supply of MetroPCS Handsets available to meet legitimate consumer demand.

52. Defendant also knew that Plaintiff has business relationships with authorized dealers of MetroPCS Handsets to provide said dealers with sufficient quantities of MetroPCS Handsets for their legitimate consumers' use exclusively on MetroPCS's wireless network. Defendant's Scheme has resulted in significant numbers of new MetroPCS Handsets that are diverted from service on MetroPCS, causing Handset shortages, and thereby harming MetroPCS's relationship with its authorized dealers.

53. Defendant also knew that Plaintiff has business relationships with legitimate MetroPCS customers to provide them with Handsets and MetroPCS service.

54. Defendant is intentionally interfering with Plaintiff's business relationships and prospective advantages through improper means and in violation of the law.

55. Defendant engaged in the acts of interference set forth herein with a conscious desire to prevent the relationships from occurring or continuing, or Defendant knew that the interference was certain or substantially certain to occur as a result of his conduct.

56. As set forth fully below, Defendant's intentional interference was committed through the use of fraud and fraudulent misrepresentations to Defendant's direct benefit and to the detriment of Plaintiff.

57. Defendant's acts injured Plaintiff's business relationships.

58. Plaintiff has been proximately damaged and continues to be damaged as a result of Defendant's interference.

59. There is no adequate remedy at law to fully compensate Plaintiff for the harm caused by Defendant's tortious interference.

## COUNT TWO

## CONSPIRACY TO DEFRAUD

60. Plaintiff reasserts the allegations set forth in Paragraphs 1 through 44 above and 71 through 78 below as though fully set forth herein.

61. An agreement and conspiracy existed and continues to exist between and among the Defendant and his co-conspirators to unlawfully acquire through fraud, market, and sell unlawfully acquired and altered MetroPCS Handsets under at least one of the MetroPCS Marks, which results in federal common law and statutory trademark infringement, common law unfair competition, contributory trademark infringement, tortious interference with business relationships and prospective advantage, unjust enrichment, and violations of the Computer Fraud and Abuse Act, among other things.

62. Defendant knowingly agreed to engage, and did engage, in one or more overt acts of fraud in pursuit of the conspiracy as set forth with more particularity in this Complaint.

63. Plaintiff has been proximately damaged as a result of fraud committed by Defendant in furtherance of his conspiracy.

64. There is no adequate remedy at law to fully compensate MetroPCS for the harm caused by Defendant's conspiracy.

## COUNT THREE

## UNJUST ENRICHMENT

65. Plaintiff reasserts the allegations set forth in Paragraphs 1 through 44 above as though fully set forth herein.

66. By bulk acquisition of MetroPCS Handsets at less than the manufacturer cost of the Handsets with no intention of using the Handsets on MetroPCS service in accordance with the Terms and Conditions, and resale of MetroPCS Handsets for profit, Defendant has obtained benefits from Plaintiff that have caused significant harm to Plaintiff and a significant financial gain to Defendant.

67. Defendant has acquired the benefits voluntarily and with full knowledge of the benefits.

68. Defendant has retained the benefits under such circumstances that make it unjust and inequitable for Defendant to retain the benefits without paying Plaintiff the value of the benefits Defendant acquired.

69. There is no adequate remedy at law to fully compensate Plaintiff for the harm caused by Defendant's unjust enrichment.

## COUNT FOUR

## COMMON LAW FRAUD AND FRAUDULENT MISREPRESENTATION

70. Plaintiff reasserts the allegations set forth in Paragraphs 1 through 44 above as though fully set forth herein.

71. As part of the Handset Theft and Trafficking Scheme, Defendant, directly or indirectly through co-conspirators, regularly and systematically misrepresent to Plaintiff that the MetroPCS Handsets are being acquired for a legitimate purpose, that the Handsets will be used by Defendant or other legitimate consumers with MetroPCS service, and that he will perform in accordance with the Terms and Conditions.

72. On information and belief, Defendant defrauded Plaintiff, and its legitimate customers and dealers, to acquire MetroPCS products to be unlocked, resold, and ultimately shipped overseas for activation on foreign carrier networks.

73. When Defendant, directly or through his co-conspirators, acquire MetroPCS Handsets as part of the Scheme, he does not intend to use the Handsets for a legitimate purpose or maintain them as active on MetroPCS service or otherwise perform in accordance with the Terms and Conditions.

74. Defendant and his co-conspirators know that they are required to use the MetroPCS Handsets on Plaintiff's network, pay the monthly service charge, and otherwise comply with the Terms and Conditions.

75. Defendant intended for Plaintiff to rely on his misrepresentations, and/or the misrepresentations of his co-conspirators, to allow Defendant to acquire and unlock the Handsets for improper purposes.

76. Plaintiff's reliance on the misrepresentations of Defendant and his co-conspirators was reasonable under the circumstances.

77. Plaintiff has been damaged and continues to suffer damages as a result of Defendant's actions.

78. There is no adequate remedy at law to fully compensate Plaintiff for the harm caused by Defendant's fraud.

## COUNT FIVE

### TRAFFICKING IN COMPUTER PASSWORDS
### 18 U.S.C. § 1030(a)(6)

79. Plaintiff reasserts the allegations set forth in Paragraphs 1 through 44 above as though fully set forth herein.

80. The MetroPCS Handsets that are trafficked by Defendant are loaded with confidential codes/passwords that access: (a) Plaintiff's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Plaintiff's computer billing network (collectively, "Plaintiff's protected computer networks"). As such, the Handsets act as a gateway to Plaintiff's protected computer networks. Plaintiff restricts access to these protected computer networks through, among other things, the confidential codes/passwords contained in the Handsets and the confidential codes/passwords ("security codes").

81. Through his Scheme, Defendant is knowingly trafficking in the security codes contained in the Handsets with the intent to defraud Plaintiff.

82. Upon information and belief, once Defendant unlawfully acquires the MetroPCS Handsets, he uses fraudulently-obtained confidential codes/passwords to gain additional access to Plaintiff's protected computer networks. This additional access into Plaintiff's protected computer networks is not authorized in any way. Upon information and belief, Defendant shares these confidential codes/passwords with his co-conspirators.

83. Upon information and belief, Defendant unlawfully accesses Plaintiff's protected computer networks using fraudulently-obtained confidential codes/passwords to: (1) perform various tests to confirm that the Handset he is purchasing is, in fact, active MetroPCS Handsets; and/or (2) unlock the MetroPCS Handset, which requires the manipulation and oftentimes permanent deletion of the proprietary software that is installed in MetroPCS Handsets and make unauthorized changes in Plaintiff's protected computer networks so the MetroPCS Handset will operate on other networks.

84. Through the Handset Theft and Trafficking Scheme, Defendant is knowingly trafficking in the confidential codes/passwords contained in the Handsets with the intent to defraud and harm Plaintiff.

85. Defendant's transfer of the Handsets and confidential codes to others constitutes "trafficking" of the codes as defined in 18 U.S.C. § 1029 in that the codes/passwords were transferred, or otherwise disposed of, to others, or Defendant obtained control of the codes/passwords with intent to transfer or dispose of them.

86. Defendant's trafficking of the Handsets substantially affects interstate commerce and communication in that the codes/passwords contained in the Handsets are trafficked over the internet, throughout the United States, and around the world, and Plaintiff's protected computer

networks are used in and affect interstate commerce and communication, and provide wireless communication services pursuant to licenses issued by the Federal Communications Commission.

87. Defendant's trafficking of illicitly-acquired codes/passwords that access Plaintiff's protected computer networks has caused and will continue to cause Plaintiff to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively -- substantially in excess of $5,000 over a one-year period.

88. With respect to loss, Plaintiff has spent well in excess of $5,000 over a one-year period assessing its hacked protected computer networks for damage and taking steps to prevent future unauthorized access by Defendant and/or his co-conspirators.

89. Also with respect to loss, Plaintiff has spent well in excess of $5,000 over a one-year period investigating Defendant's intrusions into Plaintiff's protected computer networks, assessing the possible impairment to the integrity of its protected computer networks, and conducting damage assessment regarding Defendant's collection and dissemination of MetroPCS Handsets and security codes, as well as tracking down fraudulently sold Handsets.

90. Moreover, with respect to loss, Plaintiff has spent well in excess of $5,000 over a one-year period in costs to discover Defendant's identity and/or the method by which Defendant's access Plaintiff's protected computer networks without authorization.

91. With respect to damage, by infiltrating Plaintiff's computer and telecommunications network and collecting and disseminating the fraudulently obtained Handsets and codes/passwords, Defendant has substantially impaired the integrity of Plaintiff's protected computer networks in an amount in excess of $5,000. Moreover, Defendant's actions have deprived Plaintiff of the means to control the quality of its products and services.

92. Defendant's activities constitute trafficking in computer passwords in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(6).

93. Defendant's conduct is intentional, malicious and willful.

94. Pursuant to 18 U.S.C. § 1030(g), Plaintiff is entitled to maintain this civil action against Defendant to obtain compensatory damages and injunctive and other equitable relief for the reasons identified above, and because Defendant's conduct involves at least one of the factors identified in 18 U.S.C. § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Plaintiff and its MetroPCS customers as a result of Defendant's conduct during any one year period aggregated at least $5,000 in value.

## COUNT SIX

## UNAUTHORIZED ACCESS
## 18 U.S.C. § 1030(a)(5)(C)

95. Plaintiff reasserts the allegations set forth in Paragraphs 1 through 44 above as though fully set forth herein.

96. The MetroPCS Handsets that are trafficked by Defendant and his co-conspirators are loaded with confidential codes/passwords that access: (a) Plaintiff's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Plaintiff's computer billing network (collectively, "Plaintiff's protected computer networks"). As such, the Handsets act as a gateway to Plaintiff's protected computer networks. Plaintiff restricts access to these protected computer networks through, among other things, the confidential codes/passwords contained in the Handsets and the confidential codes/passwords ("security codes").

97. In general, MetroPCS Handsets are connected to and activated on Plaintiff's protected computer networks when purchased from MetroPCS.

98. Plaintiff's proprietary computer system holds confidential information, is connected to the internet, and assists in providing federally-regulated telecommunications services. Plaintiff's computer systems are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

99. In furtherance of his Handset Theft and Trafficking Scheme, Defendant and/or his co-conspirators use fraud and misrepresentation to acquire MetroPCS Handsets, and in so doing void any purchase agreement and any legitimate access to Plaintiff's computer networks. As such, Defendant's access to the Handsets and into Plaintiff's protected computer networks is not authorized in any way.

100. Upon information and belief, once Defendant unlawfully acquires the MetroPCS Handsets, he uses fraudulently-obtained confidential codes/passwords to gain additional access to Plaintiff's protected computer networks. This additional access into Plaintiff's protected computer networks is not authorized in any way.

101. Upon information and belief, Defendant acquires the unlocking codes/passwords and methodologies for unlocking MetroPCS Handsets by misrepresenting to Plaintiff, either directly or through one of his co-conspirators, that the Handsets are being acquired and unlocked for a legitimate purpose for use by legitimate consumers with MetroPCS service, when, in fact, they are not.

102. Defendant knowingly and with the intent to defraud, causes Plaintiff to access its proprietary computer systems. Defendant is not authorized to do so.

103. Further, by illicitly acquiring and unlocking the Handsets, Defendant necessarily accesses Plaintiff's protected computer networks because the Handsets are connected to those networks when acquired from MetroPCS.

104. Defendant uses fraud and misrepresentation to acquire the Handsets from MetroPCS, and, as such, Defendant's access of Plaintiff's protected computer networks is not authorized in any way.

105. Upon information and belief, when Defendant acquires a MetroPCS Handset from Runners/Mules acting on his behalf; Defendant carefully examines the Phone to confirm it is an active MetroPCS Handset and that the various electronic code numbers and access numbers loaded on the Handset are correct. This too constitutes unauthorized access of Plaintiff's protected computer networks via a password, contained in the Handset, obtained through fraud and misrepresentation.

106. By trafficking in activated MetroPCS Handsets, the Defendant is also knowingly, intentionally, and with the intent to defraud, facilitating the unauthorized access of Plaintiff's protected computer networks.

107. Defendant's illegal and unauthorized access of Plaintiff's protected computer systems allows him to improperly steal Plaintiff's investment in MetroPCS Handsets.

108. Defendant's activities substantially affect interstate commerce and communication in that the Handsets are trafficked over the internet, throughout the United States and around the world, and Plaintiff's computer system and telecommunications network are used

in and affect interstate commerce and communication, as well as provide wireless communication services pursuant to licenses issued by the Federal Communications Commission.

109. Defendant's unauthorized access of Plaintiff's protected computer systems has caused and will continue to cause Plaintiff to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively -- substantially in excess of $5,000 over a one-year period.

110. With respect to loss, Plaintiff has lost its investments in the illegally-acquired MetroPCS Handsets and security codes and spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its protected computer systems, taking remedial action to counteract Defendant's intrusions, conducting a damage assessment regarding Defendant's collection and dissemination of MetroPCS Handsets, and tracking down fraudulently sold Handsets.

111. Moreover, with respect to loss, Plaintiff has spent well in excess of $5,000 over a one-year period in costs to discover Defendant's identity and/or the method by which Defendant's accessed Plaintiff's protected computer networks without authorization.

112. With respect to damage, by infiltrating Plaintiff's computer systems and collecting and disseminating the illegally-trafficked Handsets and security codes, Defendant has substantially impaired the integrity of Plaintiff's systems in an amount in excess of $5,000. Moreover, Defendant's actions have deprived Plaintiff of the means to control the quality of its products and services, and have stolen Plaintiff's financial investment in MetroPCS Handsets.

113. Defendant's activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C).

114. Defendant's conduct is intentional, malicious and willful.

115. Pursuant to 18 U.S.C. § 1030(g), Plaintiff is entitled to maintain this civil action against Defendant to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above, and because Defendant's conduct involves at least one of the factors identified in 18 U.S.C. § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Plaintiff and its MetroPCS customers as a result of Defendant's conduct during any one year period aggregated at least $5,000 in value.

## COUNT SEVEN

### FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114 [§ 32(1) of the Lanham Act]

116. Plaintiff reasserts the allegations set forth in Paragraphs 1 through 44 above as though fully set forth herein.

117. Defendant's and/or his co-conspirators' aforementioned conduct constitutes use of certain federally-registered MetroPCS Marks without authorization in connection with their conspiracy to sell and offer for sale unlocked, materially-different MetroPCS Handsets, which downstream customers will discover have been altered from their original state and do not include the warranties, accessories, manuals and related items that constitute part of the MetroPCS Handset package.

118. Defendant's and/or this co-conspirators' use of certain federally-registered MetroPCS Marks in connection with the sale of MetroPCS Handsets has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendant's infringing products, and the relationship between Plaintiff and Defendant.

119. Defendant's and/or his co-conspirators' unauthorized use of certain federally-registered MetroPCS Marks in connection with his participation in the Scheme is likely to continue in the future, all to the great and irreparable damage to the business, reputation and goodwill of Plaintiff.

120. Defendant's and/or his co-conspirators' use of certain federally-registered MetroPCS Marks in connection with the unlocked, materially-different MetroPCS Handsets, which do not include warranties, manuals, accessories and related items made part of the MetroPCS Handset package, and may have been flagged as "Bad IMEI" Handsets and not able to be activated with MetroPCS service, constitutes a misappropriation of Plaintiff's distinguishing and identifying federally-registered trademarks that were created as a result of significant effort and expense by Plaintiff and its predecessor-in-interest over a long period of time.

121. Defendant's and/or his co-conspirators' use of certain federally-registered MetroPCS Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendant has some connection, association or affiliation with Plaintiff, and is likely to mislead the trade and public into believing that Defendant's products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Plaintiff.

122. Defendant, in committing the foregoing acts in commerce, has damaged, and will continue to damage, Plaintiff and the reputation and goodwill of Plaintiff, and has been unjustly enriched and will continue to unjustly enrich himself at the expense of Plaintiff.

123. Plaintiff is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendant is enjoined from committing and continuing to commit such acts.

124. Defendant's aforesaid acts constitute willful infringement of Plaintiff's aforementioned federally registered trademarks in violation of 15 U.S.C. § 1114.

## COUNT EIGHT

### FEDERAL COMMON LAW TRADEMARK INFRINGEMENT AND FALSE ADVERTISING
### 15 U.S.C. § 1125 (a)(1)(A) and (B) [§ 43(a) of the Lanham Act]

125. Plaintiff reasserts the allegations set forth in Paragraphs 1 through 44 above as though fully set forth herein.

126. Defendant's and/or his co-conspirators' aforementioned conduct constitutes use of at least one of the MetroPCS Marks without authorization in connection with their conspiracy to sell and offer for sale unlocked, materially-different MetroPCS Handsets, which downstream customers will discover have been altered from their original state, are inoperable on MetroPCS service, and do not include the warranties, accessories, manuals and related items that constitute part of the MetroPCS Handset package.

127. Defendant's and/or his co-conspirators' use of at least one of the MetroPCS Marks in connection with the sale of unlocked, materially-different MetroPCS Handsets has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendant's materially-different products, and the relationship between Plaintiff and Defendant.

128. Defendant's and/or his co-conspirators' unauthorized use of at least one of the MetroPCS Marks is likely to continue in the future, all to the great and irreparable damage to the business, reputation, and goodwill of Plaintiff.

129. Defendant's and/or his co-conspirators' use of at least one of the MetroPCS Marks in connection with the unlocked, materially-different MetroPCS Handsets, which do not include warranties, manuals, accessories and related items made part of the MetroPCS Handset package, and, in some cases, have been flagged as "Bad IMEI" Handsets and not able to be activated on MetroPCS service, constitutes a misappropriation of at least one of the distinguishing and identifying MetroPCS Marks that was created as a result of significant effort and expense.

130. Defendant's and/or his co-conspirators' use of at least one of the MetroPCS Marks, evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendant has some connection, association or affiliation with MetroPCS, and thus constitutes false designation of origin and is likely to mislead the trade and public into believing that Defendant's products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by MetroPCS. Defendant is not affiliated with MetroPCS in any way.

131. Defendant, in committing the foregoing acts in commerce, has damaged and will continue to damage Plaintiff and Plaintiff's reputation, and has been unjustly enriched and will continue to unjustly enrich himself at Plaintiff's expense.

132. Plaintiff is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendant is enjoined from committing and continuing to commit such acts.

133. Defendant's use of at least one of the MetroPCS Marks in advertising or promotion misrepresents the nature, characteristics, and/or qualities of his infringing products. Such advertising and promotion is false and/or misleading. Defendant's advertising and promotion deceives or has the capacity to deceive consumers. The deception and misrepresentations have a material effect on the purchasing decisions and affect interstate commerce.

134. Defendant's activities constitute false designation of origin, false descriptions and representations, and false advertising in commerce in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B).

135. Plaintiff is entitled to appropriate relief as requested herein, including preliminary and permanent injunctive relief.

136. Defendant knew or should have known that Plaintiff is the owners of the MetroPCS Marks and that Defendant has no legal right to use any of the MetroPCS Marks on his infringing products.

137. Defendant is engaged in and continue to engage in the alleged activities knowingly, willfully and deliberately, so as to justify the assessment of exemplary damages and an award of Plaintiff's lost profits, Defendant's profits, and Plaintiff's attorneys' fees.

## COUNT NINE

## CONTRIBUTORY TRADEMARK INFRINGEMENT

138. Plaintiff reasserts the allegations set forth in Paragraphs 1 through 44 above as though fully set forth herein.

139. By misappropriating and using at least one of the MetroPCS Marks in connection with the Handset Theft and Trafficking Scheme, Defendant knowingly aided and enabled distributors and/or sellers of his products to market them to members of the general public in a way that infringes at least one of the MetroPCS Marks by placing in the hands of distributors and/or sellers an instrument of consumer deception.

140. Defendant's unlawful, unauthorized, and unlicensed sale of unlocked MetroPCS Handsets has contributed to the creation of express and implied misrepresentations that the MetroPCS Handsets, as sold by Defendant, were created, authorized or approved by Plaintiff, may be activated on MetroPCS service, and include warranties.

141. Upon information and belief, Defendant's conduct leads to post-sale confusion by causing consumers who purchase MetroPCS Handsets from Defendant or his co-conspirators to believe that he is purchasing legitimate MetroPCS handsets approved by Plaintiff that can be activated on MetroPCS service and contain original warranties.

142. Defendant's conduct constitutes contributory infringement in violation of the Trademark Act. Defendant's conduct is intentional, malicious and willful.

143. Plaintiff has been damaged and continues to suffer damages as a result of Defendant's actions.

144. There is no adequate remedy at law to fully compensate Plaintiff for the harm caused by Defendant's actions.

## COUNT TEN

## CONVERSION

145. Plaintiff reasserts the allegations set forth in Paragraphs 1 through 44 above as though fully set forth herein.

146. Defendant has and is engaged in acts of conversion in violation of the law of the State of Illinois.

147. Plaintiff has the right to provide MetroPCS Handsets and wireless service to the public. Defendant has no such privilege or right.

148. Defendant knew or should have known that he obtained the Handsets through illegitimate means and had no legal right to advertise, use or resell them.

149. Defendant is wrongfully interfering with Plaintiff's rights by engaging in the Handset Theft and Trafficking Scheme.

150. Defendant intentionally and willfully exerted dominion and ownership over the MetroPCS Handsets.

151. Defendant's conversion of Plaintiff's property has caused and continues to cause Plaintiff to suffer irreparable injury, loss of reputation, and exemplary damages to be proved at trial. Unless enjoined by this Court, Defendant will continue these acts, thereby causing Plaintiff further immediate and irreparable damage.

## COUNT ELEVEN

## DECEPTIVE TRADE PRACTICES (815 ILCS 505 ET SEQ.) AND COMMON LAW UNFAIR COMPETITION

152. Plaintiff reasserts the allegations set forth in Paragraphs 1 through 44 above as though fully set forth herein.

153. Defendant misrepresents to MetroPCS and the public that he is authorized to sell legitimate MetroPCS products.

154. Defendant has used and is using the MetroPCS Marks in connection with the above-described Scheme in such a manner as to misrepresent the source, sponsorship, approval, and/or certification of his products and services, which are substantially similar to those offered by MetroPCS.

155. The use of the MetroPCS Marks by Defendant creates an unreasonable risk that present and potential consumers may falsely conclude that there exists some affiliation, connection, or association between and among MetroPCS and Defendant, when none in fact exists.

156. Defendant's use of the MetroPCS Marks in connection with his Scheme constitutes unfair competition as codified and prohibited by the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*.

157. Defendant had actual knowledge of MetroPCS's rights at the time he used the MetroPCS Marks in connection with his Scheme. Thus, Defendant willfully and deliberately infringed MetroPCS's trademark rights.

158. Defendant's unfair business practices are of a recurring nature and harmful to the consumers and the public at large, as well as to MetroPCS. These practices constitute unlawful,

unfair, fraudulent, and deceptive business practices, and unfair, deceptive, untrue, and misleading advertising.

159. As a result of Defendant's acts, MetroPCS has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial. Unless enjoined by this court, Defendant will continue these acts, thereby causing MetroPCS further immediate and irreparable damage.

**COUNT TWELVE**

**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**

160. Plaintiff reasserts the allegations set forth in Paragraphs 1 through 44 above as though fully set forth herein.

161. A contractual relationship exists between Plaintiff and authorized dealers of MetroPCS Handsets.

162. A contractual relationship exists between Plaintiff and the purchasers of MetroPCS Handsets and wireless service, as set forth in the Terms and Conditions governing the acquisition and use of all MetroPCS Handsets.

163. Defendant has knowledge of and has intentionally and unjustifiably interfered with, and/or has knowingly facilitated a conspiracy to interfere with, these contracts between Plaintiff and its authorized dealers and legitimate MetroPCS customers.

164. Specifically, but without limitation, Defendant knows that Plaintiff has contractual relationships with legitimate consumers of MetroPCS Handsets and wireless service. Defendant interfered with these relationships by, *inter alia*, inducing the Runners and Mules or other purchasers of MetroPCS products to breach their contracts.

165. Defendant also knows that Plaintiff has contractual relationships with authorized dealers of MetroPCS Handsets under which these dealers will promote and sell MetroPCS products solely for activation with MetroPCS service. On information and belief, Defendant and/or his co-conspirators induce authorized MetroPCS dealers to breach their agreements with MetroPCS and provide new MetroPCS Handsets to Defendant for a purpose other than activation on MetroPCS service and at a financial loss to Plaintiff.

166. Defendant engaged in the acts of interference set forth herein with a conscious desire to induce breach of contract, or Defendant knew that breach of contract was certain or substantially certain to occur as a result of his conduct.

167. Plaintiff has been proximately damaged and continues to be damaged as a result of Defendant's interference.

168. There is no adequate remedy at law to fully compensate Plaintiff for the harm caused by Defendant's tortious interference.

## COUNT THIRTEEN

## CONSPIRACY TO INDUCE BREACH OF CONTRACT

169. Plaintiff reasserts the allegations set forth in Paragraphs 1 through 44 above as though fully set forth herein.

170. Defendant, working together to advance his Scheme, solicits Runners and Mules to purchase MetroPCS Handsets in bulk for the benefit of Defendant.

171. Defendant's active solicitation of Runners and Mules includes contacting these individuals and requesting specific MetroPCS Handset models.

172. Plaintiff had valid and existing contracts with these Runners and Mules and other original purchasers of the Handsets ("Purchasers").

173. Defendant had knowledge of the contracts between Plaintiff and Purchasers, and intended to, and in fact did, induce Purchasers to breach their contracts with Plaintiff.

174. The breaches of the contracts were proximately caused by Defendant's intentional and overt misconduct.

175. Plaintiff suffered damages as a result.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all triable issues.

WHEREFORE, Plaintiff respectfully requests that this Court enter final judgment and permanent injunctive relief in favor of Plaintiff and against Defendant, as follows:

(a) awarding Plaintiff its compensatory, consequential, statutory and special damages including, without limitation, its lost profits, Defendant's profits, loss of goodwill and damage to its reputation, as well as exemplary damages, together with pre and post judgment interest, as provided by law;

(b) awarding Plaintiff its reasonable attorneys' fees and costs associated with this action;

(c) granting permanent injunctive relief in favor of Plaintiff and against Defendant enjoining Defendant from engaging in the unlawful practices described in this Complaint;

(d) requiring Defendant, pursuant to the Lanham Act, to deliver to Plaintiff its entire inventory of phones and products bearing or infringing the MetroPCS Marks or a confusingly similar copy thereof; and

(e) granting such further relief as this Court deems just and proper.

Respectfully submitted this 18th day of April, 2016.

By: /s/ Lawrence H. Heftman
Lawrence H. Heftman
Email: lheftman@schiffhardin.com
Charles H.R. Peters
Email: cpeters@schiffhardin.com
**SCHIFF HARDIN LLP**
233 South Wacker Drive, Suite 6600
Chicago, IL 60606
(312) 258-5500
(312) 258-5600 (fax)

James B. Baldinger
Florida Bar No. 869899
Email: jbaldinger@carltonfields.com
*To be admitted pro hac vice*
Stacey K. Sutton
Florida Bar No. 289530
Email: ssutton@carltonfields.com
*To be admitted pro hac vice*
Alana Zorrilla-Gaston
Florida Bar No. 27256
Email: agaston@carltonfields.com
*To be admitted pro hac vice*
**CARLTON FIELDS JORDEN BURT, P.A.**
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida 33401
Phone: (561) 659-7070
Fax: (561) 659-7368

*Attorneys for Plaintiff*